## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GALEN HOSPITAL ALASKA, INC. d/b/a ALASKA REGIONAL HOSPITAL, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Action No. 18-728 (RBW) |
| ALEX M. AZAR, II, in his official capacity as Secretary of the United States Department of Health and Human Services, | ) ) ) ) | |
| Defendant. | ) ) ) | |

## <u>MEMORANDUM OPINION</u>

The plaintiffs, 168 hospitals, bring this civil action against the defendant, Alex M.

Azar, II (the "Secretary"), in his official capacity as the Secretary of the United States

Department of Health and Human Services (the "Department"), pursuant to Title XVIII of the

Social Security Act, 42 U.S.C. §§ 1395–1395lll (2018); the Administrative Procedure Act

("APA"), 5 U.S.C. §§ 701–706 (2018); and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–

2202 (2018).  <u>See</u> Complaint for Declaratory Relief and Sums Due Under the Medicare Act

("Compl." or the "Complaint") ¶ 5.  Currently pending before the Court are (1) the Secretary's

Motion to Dismiss for Failure to State a Claim ("Def.'s Mot." or the "motion to dismiss") and

(2) the Plaintiffs' Motion for Leave to File Supplemental Complaint[] ("Pls.' Mot." or the

"motion to supplement").  Upon careful consideration of the parties' submissions,[1] the Court

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum in Support of Motion to Dismiss for Failure to State a Claim ("Def.'s Mem."); (2) the Plaintiffs' Opposition to Defendant's Motion to Dismiss ("Pls.' Opp'n"); (3) the Reply Memorandum in Support of Motion to Dismiss ("Def.'s Reply"); (4) the Plaintiffs' Notice of Supplemental Authority in Opposition to Defendant's Motion to Dismiss (Apr. 17, 2019) ("Pls.' 1st Not."); (5) the Secretary's Response to Plaintiffs' Notice of Supplemental Authority in Opposition to Defendant's Motion to Dismiss (Apr. 18, 2019) ("Def.'s 1st

(continued . . .)

concludes for the following reasons that it must deny the Secretary's motion to dismiss and grant the plaintiffs' motion to supplement.

## I.   BACKGROUND

### A.   Statutory Background

#### 1.   Medicare Outlier Payments

Established under Title XVIII of the Social Security Act, the Medicare program provides federally funded medical insurance to elderly and disabled persons.  See generally 42 U.S.C. §§ 1395–1395lll.  Under this program, hospitals are not reimbursed for the actual operating costs that they incur in providing inpatient care.  See Billings Clinic v. Azar, 901 F.3d 301, 304 (D.C. Cir. 2018).  Instead, hospitals are paid at fixed rates under a scheme known as the Inpatient Prospective Payment System (the "Payment System").  See generally 42 U.S.C. § 1395ww(d). Pursuant to the Payment System, the Secretary defines categories of medical conditions known as "diagnosis-related groups[,]" Billings Clinic, 901 F.3d at 303, and, for each diagnosis-related group, the Secretary sets a standard payment amount known as the "[diagnosis-related group] prospective payment rate[,]" id. at 304.  This payment amount for any given diagnosis-related group is calculated to reflect the estimated average cost of treating a patient with that diagnosis, but in any individual case, the actual cost that the hospital incurs in providing care to the patient may be higher or lower than the diagnosis-related group payment amount.  See id.

---

(. . . continued)

Resp."); (6) the Brief of Nonprofit Hospitals as Amici Curiae[] in Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss ("Amicus Brief"); (7) the Secretary's Response to Brief of Nonprofit Hospitals as Amici Curiae in Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss ("Def.'s Amicus Resp."); (8) the Secretary's Opposition to Plaintiffs' Motion to Supplement Complaint ("Def.'s Opp'n"); (9) the Plaintiffs' Reply in Support of Motion for Leave to File Supplemental Complaint ("Pls.' Reply"); (10) the Secretary's Notice of Supplemental Authority (Feb. 14, 2020) ("Def.'s 1st Not."); (11) the Plaintiffs' Notice of Supplemental Authority in Opposition to Defendant's Motion to Dismiss (Apr. 2, 2020) ("Pls.' 2d Not."); (12) the Secretary's Response to Plaintiffs' Notice of Supplemental Authority (Apr. 6, 2020) ("Def.'s 2d Resp."); (13) the Secretary's Notice of Supplemental Authority (May 18, 2020) ("Def.'s 2d Not."); and (14) the Plaintiffs' Response to Secretary's Notice of Supplemental Authority (May 21, 2020) ("Pls.' Resp.").

When Congress enacted the Payment System, it "recognized that healthcare providers would encounter patients with needs well outside the norm." Id. "To account for those abnormally costly cases and to protect against large financial losses for hospitals, . . . hospitals [ ] [can] request additional 'outlier payments.'" Id. (quoting 42 U.S.C. § 1395ww(d)(5)(A)(ii)). A hospital may seek these outlier payments when its "cost-adjusted charges"[2] for a case exceed the "fixed-loss cost threshold[,]" which is defined as the sum of (a) the diagnosis-related group prospective payment rate, (b) any payment adjustments, and (c) a fixed dollar amount that is determined by the Secretary through an annual rulemaking process for each federal fiscal year ("FFY"). Id. at 304; see Univ. of Colo. Health v. Azar, Civ. Action No. 14-1220 (RC), 2020 WL 1557134, at *1 (D.D.C. Mar. 31, 2020). Any cost-adjusted charges above the fixed-loss cost threshold are eligible for outlier compensation, see Billings Clinic, 901 F.3d at 305, and are "reimbursed at a rate intended to approximate the marginal cost of care, currently set at [eighty] percent in most cases," Univ. of Colo. Health, 2020 WL 1557134, at *1.

"[T]he Medicare statute also limits the total amount of all outlier payments the Department can make in a given fiscal year[.]" Billings Clinic, 901 F.3d at 306. Under the Medicare program, the total amount of outlier payments made in a fiscal year "may not be less than [five] percent nor more than [six] percent of the total payments projected or estimated to be made based on [the diagnosis-related group] prospective payment rates for discharges in that year." 42 U.S.C. § 1395ww(d)(5)(A)(iv). "To satisfy this directive, [the Department] conducts an annual rulemaking to set the fixed loss threshold at a level that it estimates will result in total payments within the statutorily-determined range." Univ. of Colorado Health, 2020 WL

---

[2] A hospital's "cost-adjusted charges" is "intended to estimate the provider's real cost of care" for the patient at issue "without any markups[.]" Univ. of Colo. Health, 2020 WL 1557134, at *1. This monetary figure is calculated by multiplying the hospital's actual charges by a historical "cost-to-charge ratio[,]" a fraction that represents "the percentage of that hospital's charges attributable to actual costs." Billings Clinic, 901 F.3d at 305.

1557134, at *2.  "[S]ince 1989, [the] [Department] has attempted to set an annual threshold that will result in total outlier payments being 5.1 percent of all Medicare payments." Id.

### 2.    Judicial Review

Under the Social Security Act, "'[n]o findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency' except as the [Social Security] Act itself provides jurisdiction." Billings Clinic v. Azar, 901 F.3d 301, 312 (D.C. Cir. 2018) (citing 42 U.S.C. § 405(h)).  Here, the relevant source of judicial jurisdiction provided by the Social Security Act is 42 U.S.C. § 1395oo(f).  See id. at 312.  "That provision allows providers to seek review of a final decision of the Provider Reimbursement Review Board [(the 'Board')] and to seek expedited judicial review where the Board lacks 'authority to decide' a question of law relevant to the matter at [issue]." Id. (citing 42 U.S.C. § 1395oo(f)).

"When a hospital seeks Medicare payments from the Department, it must first submit its request to a fiscal intermediary—that is, a contracted entity to which the Department has delegated payment determinations." Id. at 311 (citing 42 U.S.C. §§ 1395kk-1, 1395oo(a)).  "If the hospital is unsatisfied with the intermediary's final determination, it may appeal the decision to the . . . Board." Id.  Normally, "the Board would review the claim, and the hospital would retain the right to seek 'judicial review of any final decision of the Board.'" Id. (quoting 42 U.S.C. § 1395oo(f)(1)).

However, in cases where "the hospital's claim 'involves a question of law or regulations relevant to the matters in controversy . . . [that the Board] is without authority to decide,' the hospital can request that the Board permit it to proceed directly to district court." Id. (alterations in original) (first quoting 42 U.S.C. § 1395oo(f)(1); then citing 42 C.F.R. § 405.1842).  "If the Board agrees, it will certify the question for immediate judicial review." Id.  Additionally, the Board can certify a case for expedited review sua sponte.  See id.

4

**B.      Other Litigation Addressing Outlier Payments for FFYs 2005 and 2006**

      **1.      District Hospital Partners I**

In 2011, 186 hospitals filed suit in an earlier case challenging the Secretary's fixed loss threshold calculations for FFYs 2004, 2005, and 2006.  District Hosp. Partners, L.P. v. Sebelius (District Hospital Partners I), 973 F. Supp. 2d 1, 23 (D.D.C. 2014), aff'd in part, rev'd in part and remanded sub nom. District Hosp. Partners, L.P. v. Burwell, 786 F.3d 46 (D.C. Cir. 2015).  Of those 186 plaintiff hospitals in District Hospital Partners I, 158 of the plaintiff hospitals (including their predecessors-in-interest) are also plaintiffs in this case.  See Pls.' Opp'n at 10–11 n.3; Def.'s Reply at 7.

In January 2014, another member of this Court granted the Secretary's motion for summary judgment in the prior case.  See District Hospital Partners I, 973 F. Supp. 2d at 23.  The district court in that case rejected the plaintiffs' arguments that the Secretary's "methodology for setting fixed loss thresholds for outlier payments to their hospitals . . . was arbitrary and capricious for . . . [FFYs] 2004, 2005, and 2006," and concluded that "the Secretary made reasonable methodological choices in determining the fixed loss thresholds" for each of these three FFYs.  Id. at 1, 5.

On appeal, the District of Columbia Circuit affirmed in part and reversed in part the district court's decision.  See District Hosp. Partners, 786 F.3d at 63.  The Circuit agreed with the plaintiffs' argument that the Secretary, in calculating the charge inflation factor used in the FFY 2004 determination, should have excluded data pertaining to 123 hospitals that had been described in a March 5, 2003 notice of proposed rulemaking as likely to have engaged in "turbo-charging," id. at 58, which is a practice where hospitals artificially inflate their billed charges, making it appear that they were incurring greater costs and were entitled to greater outlier payments, see Billings Clinic, 901 F.3d at 306.  Specifically, the Circuit held that

> [o]n remand, the Secretary should explain why []he corrected for only [fifty] turbo-charging hospitals in the 2004 rulemaking rather than for the 123 []he had identified in the [notice of proposed rulemaking]. [H]e should also explain what additional measures (if any) were taken to account for the distorting effect that turbo-charging hospitals had on the dataset for the 2004 rulemaking. And if []he decides that it is appropriate to recalculate the 2004 outlier threshold, []he should also decide what effect (if any) the recalculation has on the 2005 and 2006 outlier and fixed loss thresholds.

District Hosp. Partners, 786 F.3d at 60. Therefore, the Circuit reversed the district court's decision with respect to the FFY 2004 rule and remanded the case to the Department for additional explanation regarding its rulemaking for that year. See id. However, the Circuit affirmed the district court's rejection of the plaintiffs' challenges to the FFYs 2005 and 2006 outlier thresholds as arbitrary and capricious for failing to exclude the turbo-charging data from the calculation of a charge inflation factor for these two FFYs. See id. at 61–63. Specifically, with respect to the plaintiffs' challenges to the FFY 2005 rulemaking, the Circuit concluded that "[t]he Secretary's methodology in the 2005 rulemaking obviated any need to eliminate the turbo-charging hospitals from her dataset." Id. at 61. This conclusion was reached by the Circuit because fully half of the Secretary's charge-inflation dataset for FFY 2005 "was not infected by turbo-charging" due to the fact that it "came after the effective date of the outlier correction rule[.]"[3] Id. at 61 (noting that, where there "was no need to modify" half of the dataset, "the Secretary reasonably left both halves unaltered"). Similarly, as to the FFY 2006 rulemaking, the Circuit concluded that "there was no need to account for turbo-chargers" when

---

[3] The "outlier correction rule" was an "anti-turbo-charging reform[]" adopted by the Department's June 2003 rulemaking, Dist. Hosp. Partners, 786 F.3d at 51 (citing Medicare Program; Change in Methodology for Determining Payment for Extraordinarily High-Cost Cases (Cost Outliers) Under the Acute Care Hospital Inpatient and Long-Term Care Hospital Prospective Payment Systems Medicare Program; Change in Methodology for Determining Payment for Extraordinarily High-Cost Cases (Cost Outliers) Under the Acute Care Hospital Inpatient and Long-Term Care Hospital Prospective Payment Systems, 68 Fed. Reg. 34,494 (June 9, 2003)), which "was designed to cure most of the ills that had plagued the outlier-payment system during the turbo-charging era," Banner Health v. Price, 867 F.3d 1323, 1342–43 (D.C. Cir. 2017).

inflating charges, because "all of the charge data for the 2006 rule was collected with the outlier correction rule in effect."  Id. at 62.

On January 22, 2016, in accordance with the Circuit's remand order, the Secretary published a notice in the Federal Register providing further explanation regarding the Department's FFY 2004 rulemaking (the "Secretary's January 2016 notice").  See Medicare Program; Explanation of FY 2004 Outlier Fixed-Loss Threshold as Required by Court Rulings, 81 Fed. Reg. 3727, 3728–29 (Jan. 22, 2016).

### 2.    **Banner Health**

In another case that was proceeding before yet another member of this Court parallel with District Hospital Partners I, an entirely different set of plaintiffs—different from the plaintiffs in District Hospital Partners I and in this case, see Def.'s Mem. at 14 ("[N]one of the plaintiffs in Banner Health was a plaintiff in District Hospital Partners I or is a plaintiff in this case.")— challenged the fixed-loss threshold determinations for FFYs 2004, 2005, and 2006, see Banner Health v. Burwell, 126 F. Supp. 3d 28, 42 (D.D.C 2015), aff'd in part, rev'd in part sub nom. Banner Health v. Price, 867 F.3d 1323 (D.C. Cir. 2017); Banner Health v. Burwell, 174 F. Supp. 3d 206, 207 (D.D.C. 2016), rev'd sub. nom. 867 F.3d 1323 (D.C. Cir. 2017).

The district court in Banner Health disposed of the plaintiffs' claims through various motions to dismiss and motions for summary judgment.  See Banner Health, 126 F. Supp. 3d at 105; Banner Health, 174 F. Supp. 3d at 207.  Specifically, with respect to the plaintiffs' challenges to the FFY 2004 fixed loss determination, the district court, after remanding the case to the Department for an explanation as to "why the [Department] included the turbo-charging hospitals in the data used to derive the inflation factor used to determine the [F]FY 2004 fixed loss threshold[,]" Banner Health, 126 F. Supp. 3d at 105, concluded that the Department

provided an adequate explanation in its January 22, 2016 notice,[4] see Banner Health, 174 F. Supp. 2d at 209.  As to the FFY 2005 and 2006 fixed loss determinations, the district court, inter alia, found that "it was not arbitrary or capricious to include the turbo-chargers in the datasets used to calculate the charge inflation factor for [F]FY 2005," relying on the Circuit's opinion in District Hospitals I, Banner Health, 126 F. Supp. 3d at 100, and also rejected the plaintiffs' argument that the Department "failed to address the trend of declining cost-to-charge ratios," id. at 99, concluding that the Department's explanation was sufficient, see id. at 100.

The Circuit reversed the district court's grant of summary judgment as to FFYs 2004, 2005, and 2006 on the grounds that the Department inadequately explained certain aspects of those threshold calculations.  See Banner Health, 867 F.3d at 1342–53.  As to FFY 2004, the Circuit found that the Secretary's January 2016 notice "inadequately explained its failure to exclude turbo-chargers from its calculation of the annual rate of charge inflation," id. at 1342, and that the Department "acted arbitrarily and capriciously in failing to exclude charge data for the 123 historical turbo-chargers from its FY 2004 charge-inflation calculation," id. at 1346.   As to FFYs 2005 and 2006, the Circuit held that challenges to the Secretary's inclusion of turbo-charged data in the FFYs 2005 and 2006 calculations was "squarely foreclosed by District Health Partners [I,]" id. at 1351, and that the Secretary's projection cost-to-charge ratios used for the FFYs 2005 and 2006 fixed loss threshold calculations were arbitrary and capricious because he "fail[ed] to adequately explain why [he] did not adjust its projection cost-to-charge ratios downward," see id. at 1348–49; see also id. at 1352 ("[The Department] was obligated to explain why it employed projection cost-to-charge ratios that did not reflect its prediction that charges

---

[4] The Secretary provided the additional explanation required by the district court's Banner Health ruling in the same January 22, 2016 notice that addressed the District Hospital Partners I remand.  See Medicare Program; Explanation of FY 2004 Outlier Fixed-Loss Threshold as Required by Court Rulings, 81 Fed. Reg. 3727, 3727 (Jan. 22, 2016).

would increase more quickly than costs in [F]FY 2005."); id. at 1353 ("[The Department] acted arbitrarily and capriciously in failing to explain why it assumed that charges would increase faster than costs throughout [F]FY 2006 for some purposes, but not for others."). The Circuit therefore directed that the case be remanded to the Department for additional explanations on these issues. See id. at 1357.

On June 6, 2019, in accordance with the Circuit's remand order in Banner, the Secretary published another notice in the Federal Register providing further explanation regarding its FFYs 2004, 2005, and 2006 rulemaking (the "Secretary's June 2019 notice"). See Medicare Program; Explanation of Federal Fiscal Year (FY) 2004, 2005, and 2006 Outlier Fixed-Loss Thresholds as Required by Court Rulings, 84 Fed. Reg. 26,360–63 (June 2019, 2020).

### 3.   District Hospital Partners II

After the Secretary issued the January 22, 2016 notice, the District Hospital I plaintiffs filed a second action in this district challenging the fixed loss threshold rules for FFYs 2004, 2005, and 2006. See Complaint for Declaratory Relief and For Sums Due Under the Medicare Act, District Hosp. Partners, L.P. v. Azar, Civ. Action No. 16-528 (ESH), ECF No. 1. The district court in that case granted the defendant's partial motion to dismiss, concluding that the Circuit's opinion in District Hospital Partners I "as to the 2005 and 2006 outlier thresholds is final and [could not] be relitigated in [that] matter," and "[t]o the extent that [the] plaintiffs raise new arguments as to the outlier thresholds for FFYs 2004[, 2005, and ]2006, those new arguments [were] also foreclosed by principles of claim preclusion." District Hosp. Partners, L.P. v. Burwell, Civ. Action No. 16-528 (ESH), 2016 WL 6833929, at *4 (D.D.C. Nov. 18, 2016). The district court found that the only issue remaining to be resolved was "whether on remand the Secretary adequately explained the outlier-threshold determination for FFY 2004 by addressing the deficiencies identified by the [Circuit]" in Banner Health, id., and remanded the

case to the Secretary for additional explanation of the FFY 2004 fixed loss threshold rule, in accordance with the Circuit's ruling in Banner Health, see District Hosp. Partners, L.P. v. Azar, 320 F. Supp. 3d 42, 46 (D.D.C. 2018), appeal dismissed, No. 18-5290, 2019 WL 1467186 (D.C. Cir. Mar. 14, 2019).[5]   The Secretary responded to the district court's remand order in District Hospital Partners II in the Secretary's June 2019 notice.  See Medicare Program; Explanation of Federal Fiscal Year (FY) 2004, 2005, and 2006 Outlier Fixed-Loss Thresholds as Required by Court Rulings, 84 Fed. Reg. 26,360–63 (June 2019).

**C.     This Case**

The plaintiff hospitals "received final payments for outlier cases for . . . FFYs 2005 and 2006 . . . on the basis of the thresholds established by the Secretary."  Compl ¶ 31.  However, the plaintiffs contend that "[i]f the Secretary had established accurate outlier thresholds for FFYs 2005 and 2006, [they] would have received substantially more in outlier payments for these FFYs."  Id.  Accordingly, the plaintiffs "timely appealed the final determinations of outlier payments" regarding FFYs 2005 and 2006 to the Board.  Id. ¶ 32.  The Board issued letters certifying the plaintiffs' appeals for expedited judicial review on February 15, 2018, for FFY 2005, and on March 1, 2018, for FFY 2006.  See id. ¶ 34 (citing Compl., Exhibit ("Ex.") A (Certification Letter from the Board (Feb. 15, 2018)), and Compl., Ex. B (Certification Letter from the Board (Mar. 1, 2018))).  On March 30, 2018, the 168 plaintiff hospitals in this case filed

---

[5] The plaintiffs in District Hospital Partners I and District Hospital Partners II also filed a third action in this district challenging the FFYs 2004, 2005, and 2006 fixed loss threshold rules: District Hospital Partners, L.P. v. Azar (District Hospital Partners III), Civ. Action No. 19-2344.  See Complaint for Declaratory Relief and for Sums Due Under the Medicare Act at 1, Dist. Hosp. Partners, L.P. v. Azar, Civ. Action No. 19-2344 (ESH), ECF No. 1.  On May 14, 2020, the district court dismissed the plaintiffs' claims challenging FFYs 2005 and 2006 outlier payments on the grounds that these claims were barred by claim preclusion and issue preclusion.  See Dist. Hosp. Partners, L.P. v. Azar, No. 19-CV-2344 (ESH), 2020 WL 2496985, at *5 (D.D.C. May 14, 2020) ("The [c]ourt concludes, as it did in District Hospital II, that [the] plaintiffs' claims must be dismissed based on res judicata.").

their Complaint, see generally Compl., seeking "relief for underpayments arising from the FFYs 2005 and 2006 fixed loss threshold methodologies." Pls.' Opp'n at 13.

On July 31, 2018, the Secretary filed its motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). See Def.'s Mot. at 1. While the Secretary's motion to dismiss was pending, the plaintiffs filed their motion, seeking leave to file a supplemental complaint pursuant to Federal Rule of Civil Procedure 15(d) to add allegations regarding the Secretary's June 2019 notice. See Pls.' Mot. at 1. These motions are the subjects of this Memorandum Opinion.

## II.    STANDARDS OF REVIEW

### A.    Federal Rule of Civil Procedure 12(b)(6) – Motion to Dismiss for Failure to State a Claim

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)). While the Court must "assume the[] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Thus,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678 (citing Twombly, 550 U.S. at 555).  Also, the Court need not accept "legal conclusions cast as factual allegations" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[.]"  Hettinga, 677 F.3d at 476.  The Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice."  Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

## B.     Federal Rule of Civil Procedure 15(d) – Motion for Leave to File a Supplemental Pleading

Under Rule 15(d), "the [C]ourt may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Fed. R. Civ. P. 15(d).  Rule 15(d) aims "to make pleadings a means to achieve an orderly and fair administration of justice."  Gomez v. Wilson, 477 F.2d 411, 417 n.34 (D.C. Cir. 1973) (quoting 72 Griffin v. Cty. Sch. Bd., 377 U.S. 218, 227 (1964)).  Therefore, although the decision to grant a motion for leave to file a supplemental pleading is "within the discretion of the [ ] [C]ourt," Xingru Lin v. District of Columbia, 319 F.R.D. 1, 1 (D.D.C. 2016) (quoting Wildearth Guardians v. Kempthorne, 592 F. Supp. 2d 18, 23 (D.D.C. 2008)), such motions should be "freely granted when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action[,]" Hall v. Cent. Intelligence Agency, 437 F.3d 94, 101 (D.C. Cir. 2006).

## III.   ANALYSIS

### A.   The Secretary's Motion to Dismiss

The Secretary moves to dismiss this case for failure to state a claim on the grounds that "[t]he claims of the 15[8] hospitals that were plaintiffs in District Hospital Partners I and [District Hospital Partners ]II are barred by the prior litigation" by the doctrines of claim and issue preclusion.  Def.'s Mem. at 1, 18.  The Court will address the Secretary's arguments in turn.

#### 1.   Claim Preclusion

The Secretary argues that claim preclusion "prevent[s] the plaintiffs from litigating any challenge to the validity of the [FFYs] 2005 and 2006 fixed loss threshold determinations, whether based on previously litigated arguments or new arguments."  Def.'s Reply at 11.  The Secretary further contends that "the plaintiffs are bound by all determinations made in District Hospital Partners I and [District Hospital Partners ]II even though their requests for additional payments leading to those cases were only for services delivered in [FFY] 2004[,]" rather than FFYs 2005 and 2006.  Def.'s Mem. at 23.  The plaintiffs respond that claim preclusion cannot bar them from challenging the FFYs 2005 and 2006 fixed loss thresholds, because, although 158 of the plaintiffs were parties to District Hospital Partners I, these plaintiffs could not have brought claims challenging the FFYs 2005 and 2006 thresholds, since they were "statutorily precluded from seeking administrative or judicial relief" for these claims at the time.  Pls.' Opp'n at 16; see id. at 20–24.

Plaintiffs are generally expected to "present in one suit all the claims for relief that [they] may have arising out of the same transaction or occurrence."  U.S. Indus., Inc. v. Blake Constr. Co., 765 F.2d 195, 205 (D.C. Cir. 1985).  Under the doctrine of claim preclusion, "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on

13

the same cause of action." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979).   In

other words, claim preclusion bars plaintiffs' claims "if there has been prior litigation

(1) involving the same claims or cause of action, (2) between the same parties or their privies,

and (3) there has been a final, valid judgment on the merits, (4) by a court of competent

jurisdiction." Smalls v. United States, 471 F.3d 186, 192 (D.C. Cir. 2006).  Claim preclusion

prohibits "the parties to a suit and their privies" from relitigating in a separate proceeding "any

ground for relief which they already have had an opportunity to litigate[,] even if they chose not

to exploit that opportunity." Hardison v. Alexander, 655 F.2d 1281, 1288 (D.C. Cir. 1981); see

I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co., 723 F.2d 944, 949 (D.C. Cir. 1983) (noting

that claim preclusion "forecloses all that [that] might have been litigated previously").

Here, the Court concludes that because the 158 plaintiffs could not have brought their

FFYs 2005 and 2006 claims in District Hospital Partners I, their participation in that prior action

does not now preclude them from litigating their FFYs 2005 and 2006 claims for the first time in

this action.  Contrary to the Secretary's argument that even if a plaintiff in District Hospital I did

not challenge the FFYs 2005 and 2006 thresholds in that case, it is precluded from challenging

them here simply because a different plaintiff did so there, see Def.'s Mem. at 21–22, the

Restatement (Second) of Judgments, upon which the Secretary relies, see id. at 21 (citing

Restatement (Second) of Judgments § 34(2) & cmt. B (Am. Law. Inst. 1982)), states that while a

party is generally "bound by and entitled to the benefits of the rules of res judicata with respect

to determinations made while he was a party," Restatement (Second) of Judgments § 34(2), there

are also exceptions to this general rule, one of which permits a plaintiff to bring a claim in a

subsequent action when "formal barriers . . . existed and were operative against a plaintiff in the

first action" and prevented the plaintiff from bringing its claim earlier, id. § 26 cmt. c.  Indeed,

here the plaintiffs faced a jurisdictional barrier that prevented them from bringing their FFYs 2005 and 2006 claims in the earlier action, because they had not yet exhausted their administrative remedies pursuant to Title XVIII of the Social Security Act.

When the District Hospital Partners I suit commenced, the Board had granted the 158 plaintiffs in this case "expedited judicial review with regard to the FFY 2004 outlier calculation methodology[,]" but not as to the FFYs 2005 and 2006 outlier calculation methodology.  Pls.' Opp'n at 11 (citing Compl., Exhibit ("Ex.") C (HCA FFY 2004 Outlier Threshold Group)). Therefore, 42 U.S.C. § 1395oo(f), under which a hospital can "seek [judicial] review of a final decision of the . . . Board [or] [ ] seek expedited judicial review where the Board lacks 'authority to decide' a question of law relevant to the matter at [issue]," Billings Clinic, 901 F.3d at 312 (quoting 42 U.S.C. § 1395oo(f)), barred the 158 plaintiffs from bringing their FFYs 2005 and 2006 claims in District Health Partners I because no plaintiff in this case was certified to bring claims for FFYs 2005 and 2006 in District Health Partners I, see Compl., Ex. A (February 15, 2018 Letter from the Board Granting Expedited Judicial Review (FFY 2005)) (listing the hospitals certified by the Board for expedited judicial review of their claims for FFY 2005); id., Ex. B (March 1, 2018 Letter from the Board Granting Expedited Judicial Review (FFY 2006)) (listing the hospitals certified by the Board for expedited judicial review of their claims for FFY 2006).  Cf. Three Lower Ctys. Cmty. Health Servs., Inc. v. U.S. Dep't of Health & Human Servs., 317 F. App'x 1, 3 (D.C. Cir. 2009) (holding that operator of health center lacked subject matter jurisdiction to bring its challenge to Medicare cost limitations, where operator failed to first exhaust the agency review procedures for the fiscal years at issue before bringing its claim in federal court); Am. Chiropractic Ass'n. v. Leavitt, 431 F.3d 812, 816 (D.C. Cir. 2005) (stating that under Title XVIII of the Social Security Act, "[j]udicial review may be had only after the

claim has been presented to the Secretary and administrative remedies have been exhausted"). Nonetheless, "[u]nder the Secretary's theory, . . . even if a hospital is jurisdictionally unable to challenge a particular year's rule, it would nevertheless be bound by another hospital's challenge of that rule in the same case." Univ. of Colo. Health v. Azar, Civ. Action No. 14-1220 (RC), 2020 WL 1557134, at *9 (D.D.C. Mar. 31, 2020). "In effect, then, a hospital could be precluded from contesting a threshold rule even though it previously had no power to do so." Id. The Secretary having failed to cite any cases that have applied claim preclusion in this context, the Court declines accept the Secretary's position.[6] Id. (noting that "[t]he Secretary has not cited any cases that apply preclusion in such a context," and expressing the Court's "reluctan[ce] to apply the doctrine in such circumstances"). To hold otherwise would be contrary to the principle that "[p]reclusion is designed to limit a plaintiff to one bite at the apple, not to prevent even that single bite." Hurd v. D.C., Gov't, 864 F.3d 671, 679 (D.C. Cir. 2017). And, because "[i]t is

---

[6] The Secretary cites Billings Clinic for the proposition that "a court may properly issue an adverse ruling binding on multiple plaintiffs who are challenging the same fixed loss threshold rule even if some of those plaintiffs have not yet brought payment claims through the administrative process prescribed by § 1395oo(f)(1)." Def.'s Reply at 1–2 (footnote omitted). However, the Secretary's reliance on Billings Clinic is misplaced, see id. at 8–9, because the Secretary mischaracterizes the Circuit's holding in Billings Clinic. As the amici in this case correctly note, in Billings Clinic, the Circuit "simply noted that it had jurisdiction to consider the questions before it, and that to have jurisdiction[,] it need only know that at least one plaintiff had the requisite standing for each issue." Amicus Brief at 16. Specifically, the Circuit stated:

> As for the plaintiff [h]ospitals over which the Board declined to exercise jurisdiction, the question is more complicated. While the Secretary has since disavowed the Board's procedural objection to the claims in that case, that leaves unanswered whether the district court could proceed without first remanding for either a final decision or certification for expedited review from the Board. We need not resolve that jurisdictional quandary because there are [h]ospitals with valid Board certifications of expedited review for each of the years at issue, and only non-individualized injunctive relief is sought.

Billings Clinic, 901 F.3d at 312. Accordingly, the Circuit did not address, in any way, the binding nature or the preclusive effect of the court's judgments on claims as to those plaintiffs over which it lacked jurisdiction. Instead, the Circuit simply explained that it "need not resolve" the question of whether it had subject matter jurisdiction over certain plaintiffs' claims because there were plaintiffs with claims in each "year[] at issue" for whom subject matter jurisdiction was uncontested. Id. Therefore, the Circuit "proceed[ed] to the merits on a clean jurisdictional slate." Id. Thus, the Court concludes that it would be improper to glean any guiding precedent regarding claim preclusion from Billings.

reasonably well settled that claim preclusion does not bar a claim which could not have been brought in the earlier action," Univ. of Colo. Health, 2020 WL 1557134, at *9 (declining to preclude plaintiff hospitals from challenging a fixed loss threshold determination that was challenged and upheld in an earlier case, where the plaintiffs were "jurisdictionally unable to challenge [that] particular year's rule" in the prior case and "previously had no power to do so"); see also Univ. of Colo. Health at Mem'l Hosp. v. Burwell, 233 F. Supp. 3d 69, 80 (D.D.C. 2017) (noting "the traditional maxim that claim preclusion does not bar bringing later claims that were not available to be brought at the time of the previous claims"); 18 Wright & Miller, Federal Practice and Procedure § 4412 (3d ed. 2019) ("Limitations on the jurisdiction or the nature of the proceedings brought in a first court may justify relaxation of the general requirement that all parts of a single claim or cause of action be advanced.  It is clear enough that a litigant should not be penalized for failing to seek unified disposition of matters that could not have been combined in a single proceeding."), the Court concludes that the plaintiffs are not now precluded from bringing their FFYs 2005 and 2006 claims in this case.

    **2.**    **Issue Preclusion**

    The Secretary also asserts that "[p]rinciples of issue preclusion prevent the plaintiffs from revisiting contentions that were rejected either by this [c]ourt or the [Circuit] in the earlier litigation." Def.'s Mem. at 18.  Specifically, the Secretary contends that "[t]he plaintiffs cannot revive their challenges to the 2005 and 2006 fixed loss threshold determinations" because the district "[c]ourt upheld those determinations in District Hospital Partners I, and the [Circuit] affirmed those parts of th[e] [district] [c]ourt's rulings in full."  Id.  The plaintiffs respond that issue preclusion does not bar their claims because "[t]he critical issue in this case is one that was never decided in [District Health Partners I], namely, whether the Secretary's decision not to

adjust hospitals' projection cost-to-charge ratios downward in FFYs 2005 and 2006 was arbitrary and capricious."  Pls.' Opp'n at 28.

In contrast to the doctrine of claim preclusion, the doctrine of "[i]ssue preclusion[] . . . bars 'successive litigation of an issue of fact or law [that was] actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim."  Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (quoting New Hampshire v. Maine, 532 U.S. 742, 748–49 (2001)).  An issue is precluded from further consideration if (1) "the same issue now being raised . . . [was] contested by the parties and submitted for judicial determination in the prior case[,]" (2) "the issue . . . [was] actually and necessarily determined by a court of competent jurisdiction in that prior case[,]" and (3) "preclusion in the second case . . . [does] not work a basic unfairness to the party bound by the first determination."  Martin v. U.S. Dep't of Justice, 488 F.3d 446, 454 (D.C. Cir. 2007) (quoting Yamaha Corp. of Am. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992)).  "In determining whether issue preclusion exists, a court may take judicial notice of all relevant facts [that] are shown by the court's own records, as well as public records from other proceedings."  Budik v. Ashley, 36 F. Supp. 3d 132, 142 (D.D.C. 2014) (Walton, J.) (alteration in original) (internal quotation marks omitted).

Although related, the doctrines of claim and issue preclusion are distinct concepts.  As the Supreme Court has explained, "whereas [claim preclusion] forecloses all that which might have been litigated previously, [issue preclusion] treats as final only those questions actually and necessarily decided in a prior suit."  Brown v. Felson, 442 U.S. 127, 139 n.10 (1979).  As compared to claim preclusion, issue preclusion is "[a] related but narrower principle—that one who has actually litigated an issue should not be allowed to relitigate it[.]"  Clark-Cowlitz Joint Operating Agency v. Fed. Energy Reg. Comm'n, 826 F.2d 1074, 1079 (D.C. Cir. 1987).

As an initial matter, the parties disagree over the appropriate scope of the issues decided in District Health Partners I for the purposes of issue preclusion. The Secretary argues that "the validity of each of the challenged determinations is an 'issue' for the purposes of issue preclusion[,]" Def.'s Reply at 12, and that therefore, "issue preclusion bars the plaintiffs from challenging the validity of the [FFY] 2005 or 2006 fixed loss threshold rule even if they have new arguments to offer[,]" id. at 13. The plaintiffs respond that the Secretary's "characterization is overly broad and conflates the claims with the issues." Pls.' Opp'n at 29. The Court agrees with the plaintiffs. The proper scope of the issue here does not encompass any challenge to the FFYs 2005 and 2006 outlier thresholds, but rather is limited to the specific issues actually and necessarily decided in District Health Partners I. See Brown, 442 U.S. at 139 n.10 ("Whereas [claim preclusion] forecloses all that which might have been litigated previously, [issue preclusion] treats as final only those questions actually and necessarily decided in the prior suit."). Contrary to the Secretary's argument that "the validity of each of the challenged [threshold] determinations is an 'issue' for the purposes of issue preclusion," Def.'s Reply at 12 (citing Canonsburg Gen. Hosp. v. Burwell, 807 F.3d 295, 300, 307 (D.C. Cir. 2015)),[7] the Circuit, in Banner Health, recognized that challenges to different aspects of a particular FFY can constitute different issues. Compare Banner, 867 F.3d at 1351 (finding that the plaintiffs' challenge to the Secretary's inclusion of turbo-charged data in its FFYs 2005 and 2006 charge-inflation formula was "squarely foreclosed by District Health Partners [I]"), with id. at 1353 (concluding that the Secretary's projection cost-to-charge ratios used for FFYs 2005 and

---

[7] The Secretary's reliance on Canonsburg is misplaced because the facts of that case vary in crucial ways from the facts in this case. In Canonsburg, the Circuit addressed "the validity of section 2534.5" of the Medicare Provider Reimbursement Manual, and identified this as the relevant "issue" for purposes of issue preclusion. 807 F.3d at 307. Because section 2534.5 of the Medicare Provider Reimbursement Manual operates differently than the Medicare inpatient outlier payment scheme at issue in this case, the Secretary's comparison to section 2534.5 is not analogous to the fixed loss thresholds at the heart of this case. Therefore, the Secretary's comparison does not shed light on determining the proper scope of the issue presented for the Court's consideration.

2006 were arbitrary and capricious).  In fact, in <u>Banner Health</u>, the Circuit observed that its

<u>District Hospital Partners I</u> rejection of the plaintiffs' challenge to the FFY 2006 rule "was

tethered to the fact that there was no need to account for turbo-chargers when inflating charges,"

but that <u>District Hospital Partners I</u> "did not foreclose all possible challenges to the [F]FY 2006

threshold."  <u>Id.</u> at 1353 (internal quotation marks omitted); <u>see also</u> <u>id.</u> at 1351 (noting that "the

<u>District Hospital Partners [I]</u> court's [F]FY 2005 analysis hinged on the fact that fully half of the

charge-inflation dataset 'was not infected by turbo-charging'").  And, as the plaintiffs' correctly

note, "the issue actually decided with respect to" the other plaintiff hospitals' claims in <u>District</u>

<u>Health Partners I</u> was limited to whether "the Secretary's inclusion of turbo-charging hospital

data in his FFYs 2005 and 2006 charge-inflation formula" was arbitrary and capricious, Pls.'

Opp'n at 29, and this issue is "[i]mmaterial to the [i]ssues" in this case, <u>id.</u> at 28.  Accordingly,

the Court concludes the inclusion of turbo-charged data and the calculation of projection

cost-to-charge ratios constitute distinct issues, even within the same FFY's fixed loss threshold.

 The Court also agrees with the plaintiffs that they are not barred by issue preclusion from

pursuing their challenge to the Secretary's decision not to adjust hospitals' projection

cost-to-charge ratios downward in FFYs 2005 and 2006.  The plaintiffs correctly note that

"whether the Secretary's decision not to adjust hospitals' projection cost-to-charge ratios

downward in FFYs 2005 and 2006 was arbitrary and capricious" "was never decided in [<u>District</u>

<u>Health Partners I</u>]," Pls.' Opp'n at 28, but instead was addressed by the Circuit in <u>Banner Health</u>,

see <u>Banner Health</u>, 867 F.3d at 1349 (concluding that "the [Secretary's] approach" to projection

cost-to-charge ratios "was 'internally inconsistent and inadequately explained'"), a point that the

Secretary concedes, <u>see</u> Def.'s Mem. at 15 ("[T]he plaintiffs in <u>Banner Health</u> prevailed on some

issues that had not been addressed by the <u>District Hospital Partners I</u> decision."); <u>id.</u> at 20

("[T]he court in <u>Banner Health</u> ruled for the plaintiffs in that case on some issues not addressed by the [Circuit's] ruling in <u>District Hospital Partners I</u>[.]").  And, because the plaintiffs' challenge to the projection cost-to-charge ratio calculations as to FFYs 2005 and 2006 was not previously "contested by the parties and submitted for judicial determination" and "actually and necessarily determined" by the court in <u>District Partners I</u>, <u>Martin</u>, 488 F.3d at 454, the Court concludes that the plaintiffs cannot now be precluded from raising this issue for the first time in this litigation.[8]

**B.     The Plaintiffs' Motion to File a Supplemental Complaint**

In their motion to supplement, the plaintiffs seek leave to file a supplemental complaint to add allegations regarding the Secretary's June 2019 notice.  <u>See</u> Pls.' Mot. at 1–2.  The plaintiffs contend that "supplementation to address the Secretary's most recently articulated rationale for his methodology in establishing the outlier thresholds in [F]FYs 2005 and 2006 would [ ] promote the economic and speedy disposition of the entire controversy between the parties."  <u>Id.</u> at 2. The plaintiffs also assert that "[t]his information was not available at the time the [ ] [C]omplaint was filed in this action, but it pertains to the rationale (or lack thereof) for the Secretary's outlier methodology in [F]FYs 2005 and 2006."  <u>Id.</u> at 2–3.  In response, the

---

[8] Similarly, the Court is unpersuaded by the Secretary's argument that issue preclusion bars the plaintiffs' claims because they have already had "the opportunity to present proofs and argument[]" through their involvement in <u>District Health Partners I</u>.  Def.'s 2d Resp. at 2 (quoting <u>Taylor v. Sturgell</u>, 553 U.S. 880, 895 (2008)).  In support of this theory, the Secretary asserts that "issue preclusion can apply to a person who was <u>not</u> a party to an earlier case but who controlled a party's litigation efforts[,]" Def.'s Amicus Resp. at 4; <u>see also</u> Def.'s Mem. at 23–25, and argues that this precedent "makes it even more obvious that the plaintiffs in this case—full parties who actively participated in the litigation and briefing of fiscal year 2005 and 2006 matters in their own names—are bound by preclusion[,]" Def.'s Amicus Resp. at 4.  However, the Court is unpersuaded by the Secretary's argument and unwilling to find that the plaintiffs are barred by issue preclusion for this reason.  Because the Court has already determined that the issues raised in <u>District Health Partners I</u> are distinct and different from the issues that the plaintiffs raise here, it would be inappropriate to apply issue preclusion based solely on the plaintiffs' involvement in the prior action.  Therefore, the Court concludes that the plaintiffs in this action cannot be said to have had their "day in court," <u>Taylor</u>, 553 U.S. at 895, such that the doctrine of issue preclusion would prevent them from raising the issues being pursued for the first time in this action.

Secretary argues that the plaintiffs' request should be denied as futile because "all of the plaintiffs' claims in this action are barred by claim preclusion and issue preclusion," and the plaintiffs' "proposed new allegations concerning the Secretary's June 2019 . . . notice are not meaningful in this case[.]"  Def.'s Opp'n at 1 (footnote omitted).

The Court concludes that permitting the plaintiffs to file a supplemental complaint is warranted under Rule 15(d).  The plaintiffs seek to file a supplemental complaint to address the Secretary's June 2019 notice, which was not yet issued at the time when the plaintiffs filed their Complaint in this action in 2018.  See Compl. at 1 (filed Mar. 30, 2018); Fed. R. Civ. P. 15(d) ("The [C]ourt may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.").  Additionally, the Secretary's June 2019 notice, which contains "the Secretary's most recently articulated rationale for his methodology in establishing the outlier thresholds in [FFYs] 2005 and 2006[,]" Pls.' Mot. at 2, pertains to the plaintiffs' claims in this action.  Accordingly, the Court concludes that allowing the plaintiffs to file a supplemental complaint to address the Secretary's June 2019 notice would "promote the economic and speedy disposition of the entire controversy between the parties" by ensuring that the Complaint reflects the most recent relevant events in this action.  Cause of Action Inst. v. U.S. Dep't of Justice, 282 F. Supp. 3d 66, 72 (D.D.C. 2017) (Walton, J.) (quoting Hall v. Cent. Intelligence Agency, 437 F.3d 94, 101 (D.C. Cir. 2006)).  Additionally, allowing the plaintiffs to file a supplemental complaint "will not cause undue delay or trial inconvenience," or otherwise "prejudice the [Secretary's] rights[.]"  Id. (quoting Hall, 437 F.3d at 101).

The Secretary's arguments opposing the plaintiffs' motion are not convincing.  The Secretary does not contend that granting the plaintiffs leave to file a supplemental complaint

would cause undue delay or trial inconvenience, or that it would otherwise prejudice the Secretary's rights.  Instead, the Secretary asserts the plaintiffs' motion should be denied "on grounds of futility" because "the proposed pleading would not survive a motion to dismiss[.]" Def.'s Opp'n at 5 (quoting Nat'l Wrestling Coaches Ass'n v. Dep't of Educ., 366 F.3d 930, 945 (D.C. Cir. 2004).   However, the Court has already determined that the Secretary's motion to dismiss must be denied, as neither claim nor issue preclusion operates to bar the plaintiffs' challenge of the fixed loss threshold rules for FFYs 2005 and 2006.  Therefore, the plaintiffs' motion to supplement is not futile on the grounds that the Secretary asserts in his motion to dismiss.

Additionally, the Secretary contends that its June 2019 notice, which responds to the District Hospital Partner I's remand order, "is not pertinent in this case[,]" id., because "the litigation in District Hospital Partners I conclusively resolved the plaintiffs' claims relating to [FFYs] 2005 and 2006[,]" id. at 5.  However, having previously concluded that neither claim preclusion nor issue preclusion bars the plaintiffs' claims in this case, the Court finds that the litigation in District Hospital Partners I does not conclusively resolve the plaintiffs' claims relating to FFYs 2005 and 2006.  Moreover, on appeal of the District Hospital Partners I case, the Circuit instructed the Secretary to "decide what effect (if any) the recalculation [of the 2004 threshold] has on the 2005 and 2006 outlier and fixed loss thresholds" if the Secretary recalculated the 2004 threshold on remand.  District Hospital Partners I, 786 F.3d at 60.  Because "defects in the FFY 2004 outlier threshold may necessitate recalculation of the FFY[s] 2005 and [ ] 2006 outlier thresholds[,]" Pls.' Reply at 3, the Secretary's June 2019 notice may therefore ultimately pertain to the plaintiffs' claims regarding FFYs 2005 and 2006 in this case.

The Secretary fails to present further argument for denying the plaintiffs' motion for leave to file the supplemental Complaint if the Court denied his motion to dismiss.  Accordingly, the Court concludes that the plaintiffs are permitted to file a supplemental complaint pursuant to Rule 15(d).

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that neither claim preclusion nor issue preclusion bars the plaintiffs from bringing their claims in this case, and therefore denies the Secretary's motion to dismiss.  Additionally, the Court concludes that the allowing the plaintiffs to file a supplemental complaint would promote the economic and speedy disposition of the entire controversy between the parties, and therefore grants the plaintiffs' motion to supplement their Complaint.

**SO ORDERED** this 21st day of July, 2020.[9]

REGGIE B. WALTON
United States District Judge

---

[9] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.